

NEW JERSEY OFFICE
06 POMPTON AVENUE, SUITE 25
CEDAR GROVE, NJ 07009
(973) 239-4300

NEW YORK OFFICE
347 5TH AVENUE, SUITE 1402
NEW YORK, NY 10016
(646) 205-2259

LORRAINE@LGRLAWGROUP.COM
WWW.LGAULIRUFO.COM
FAX: (973) 239-4310

*Via ECF*  
September 6, 2023

Hon. Colleen McMahon  
United States District Court Judge  
Thurgood Marshall  
United States Courthouse  
40 Foley Square  
New York, NY 10007

                                        Re: United States v. Derrick Latimore  
                                             22-cr-00082 (CM)

Dear Judge McMahon:

       This sentencing submission is offered on behalf of Derrick Latimore ("Mr. Latimore" or "Derrick"), who is scheduled to be sentenced by Your Honor on September 20, 2023. Kindly accept this submission in support of sentencing Mr. Latimore to a 36-month term of imprisonment. Mr. Latimore submits that this is a sentence that is sufficient but not more than necessary to satisfy the goals of sentencing. The legal and factual support for this request follows.

       **I.**       **Preliminary Statement**

       Mr. Latimore grew up in a loving, albeit poor household. He saw his mother work tirelessly, continuously working overtime to provide for their family, all the time receiving little or no support from Mr. Latimore's father. During his teen years, Derrick developed a serious gambling addiction. This is when he first turned to the streets to obtain money to support his gambling habit. His life began to spiral out of control, and ultimately landed Mr. Latimore in jail, where he returned again and again. However, this present charge has convinced Derrick to leave his prior life of crime behind him and focus on being the best friend and family member, and most importantly the best father to his three-month-old twins. Derrick has determined he is too old and too tired to continue this way of life, and he has demonstrated that he is ready for this

change in that he has already begun to undertake actions to change the trajectory of his life. These actions include participating in multiple training programs and classes to develop skills he can use to succeed once he is released. All of the factors of this case, including considering similarly situated defendants in this case, support a sentence of 36 months of incarceration.

## II.     Procedural History

Mr. Latimore was charged in an indictment filed in the Southern District of New York on February 8, 2022. *See* Presentence Investigation Report ("PSR") ¶ 1. On May 18, 2023, Mr. Latimore pleaded guilty to a violation of United States Code ("U.S.C.") 841(b)(1)(C), in accordance with a plea agreement. PSR, ¶ 4. This statute has no mandatory minimum sentence and a maximum sentence of 20 years.

## III.    Background Facts

Derrick was incredibly lucky to grow up in a stable home, free from neglect or abuse. PSR, ¶ 98. Although his parents separated at a young age, he lived in the same home from the age of 5 until he was an adult. *Id.* When Derrick's mother worked overtime, he was cared for by his grandmother, Bernice Stokes. To this day, Ms. Stokes and Derrick share a special bond. *Id.* Ms. Stokes is currently 87 years old, and Derrick worries about missing out on this very important time with her while he is incarcerated. Derrick's mother and grandmother remain extremely supportive of him. Derrick's father, John Latimore, only provided sporadic child support throughout Derrick's childhood, and sadly, only reached out to Derrick on special occasions, such as on birthdays or holidays. PSR, ¶ 99. Derrick has two paternal half siblings, Candace Latimore, a nurse's assistant and hairdresser, and Jonathan Latimore, who works in an office. PSR, ¶ 97. Derrick has recently become very close to both of his siblings, and both remain supportive of him. *Id.* PSR, ¶¶ 96, 98. In 2019, Derrick is married to Kayla Lattimore, who also remains supportive of Derrick. PSR, ¶ 100.  Recently, Derrick became the father to twins, born to an acquaintance who Derrick dated during a time he was separated from his wife. The twins' mother remains supportive of Derrick and intends to welcome him into the lives of their twins when he is released from prison. Despite these present charges, once released, Derrick wants to be for the twins, to see them grow up. PSR, ¶ 104.

Derricks friends and family all express that he has many positive aspects and maintain that despite his flaws and very bad decisions, he is man of good character. Derrick's wife, Kayla Latimore, writes, "[h]e is a person of good moral character, caring compassionate and selfless." *See* Chin Letter, hereto attached as Exhibit B. Another close friend of Derrick, Adia Archer, writes, "Derrick is an honorable (sic) individual in our (sic) community and a good human being." *See* Archer Letter, hereto attached as Exhibit D. Derrick has another adult child Derrell Lattimore, from a previous relationship, who works as a security guard. PSR, ¶ 102. Unfortunately, Derrick's son was the victim of a drive-by shooting three years ago which results in him experiencing chronic pain on the area where he was shot. *Id.*

While his home life was relatively positive, Derrick was being introduced to aspects in the streets that did not bode well for him in his decisions as a young man. After an introduction

2

to gambling by his uncle when he was 15, Derrick quickly became an around the clock gambler. PSR, ¶ 114. Derrick's mother even says that this was how he was financially supporting himself. PSR, ¶ 96. By age 15, he was consistently smoking marijuana and in his 20s he was smoking about 8 marijuana cigarettes daily and spending about $70 a day to support this habit. PSR, ¶ 116. Sometime in around 2017, Derrick was the victim of a random shooting, shot by a bullet in his back. PSR, ¶ 108. To this day, his left leg is noticeably thinner than his right, and he suffers from back pain and nerve damage. *Id.* He also has a slipped disc in his spine that may require surgery and also causes him tremendous pain. PSR, ¶ 108. Prior to being incarcerated, Derrick received physical therapy three times a week. PSR, ¶ 109. Since being incarcerated, Mr. Latimore's health has been a grave concern of his and remains unattended by the medical department at the jail. Derrick has been experiencing extreme pain and difficulty while in jail. He has requested medical intervention on several occasions, and counsel has continuously emailed and reached out to the MDC medical department as well, so that he can get his medical needs addressed.  However, Derrick's medical needs continue to go unattended.  In addition, Mr. Latimore's mental health has been suffering since his incarceration as well.  PSR, ¶¶ 111-112.

     Prior to his arrest in his matter, Derrick had been attempting to take action in the hope of getting his life back on the right track. In 2020, he obtained his GED.  PSR, ¶ 117. Also, for about 18 months prior to his arrest in this case, Mr. Latimore was taking online college classes at Salem University.  PSR, ¶ 118. And while his arrest in the instant offense caused him to stop college classes, that has not impeded his desire and motivation to obtain additional education in order to secure a good job to support his wife and his children.  His motivation to do well and continue on the right path is evident through the actions he has undertaken since being incarcerated at the MDC. He has spent his time taking multiple courses, and learning information and skills that will allow him to succeed once he is released. Derrick participated has received at least 8 certificates (probably more by his sentencing date) that are attached as Exhibit E. Moreover, several of these courses required 24 -25 hours to complete, including a certification in a Commercial Driver's License ("CDL"), for which he completed the test preparation class on May 26, 2023. *See* Exhibit E. In addition, he completed a multiple hour program that taught him about building homes for Habitat for Humanity, which was completed on June 2, 2023 and a leadership and influence course completed on June 6, 2023. PSR, ¶ 10.  In addition to the courses, he has taken thus far, since being incarcerated Derrick has been cutting hair for the inmates in exchange for commissary funds.  He has thought about and outlined his plans for the future, which include obtaining his college degree in business finance, and using that knowledge to help him own and operate his own barbershop. PSR, ¶¶ 10, 122.

     Friends close to Derrick see him as a leader, and know that if he works towards his goals, he will achieve them. Speaking on this, Mercedes Williams, writes, "Mr. Latimore exudes the true essence of an emerging prodigious leader because he is compassionate, inspiring, and incredibly reliable…Mr. Latimore is always seeking opportunities to learn additional skills that will help support his journey in becoming a leader." *See* Williams Letter, hereto attached as Exhibit C. Moreover, it is clear that Derrick is looking forward to a future free of any criminal activity upon release so that he can continue to support his children and his family. He has people in his life supporting him, willing to offer him a job upon his release. Chi Ali Griffith, a friend of Derrick's for 15 years writes, "[u]pon release Derrick will be given the opportunity to

be employed by my nonprofit C.H.I. Choices Have Impact. I will offer my assistance and guidance and Derrick will be able to work in a setting that is not only conducive to his personal development but will allow him to be an asset to his community." *See* Griffith Letter, hereto attached as Exhibit A.

And while Mr. Latimore's past is not devoid of criminal history, there are factors that he asks the Court to consider in mitigation. The Guidelines are about to change and would effectively lower Mr. Latimore's criminal history from a category IV to a category III.[1] This would in turn lower his advisory Guideline range from 135 – 168 to 121 – 151. In addition, a lot of Derrick's criminal history occurred long ago – much of it over 20 years ago. PSR,¶¶ 51 – 85.

Derrick was a street level drug dealer in this offense, whose culpability was considered in the "bottom third" of those charged in the conspiracy. PSR, ¶ 32. Moreover, several co-defendants were held accountable for dealing drug weights that were substantially higher than the weight attributable to Mr. Latimore. In fact, 5 of the 7 co-defendants were found to be responsible for drug weights of between 5 - 15 kilograms of cocaine. PSR, ¶¶ 25-32. Those weights are at least 3 times greater than the weight Derick was found responsible for, which was 3.5 – 5 kilograms. PSR, ¶ 32. Only one other co-defendant (Tiran Branch) was held to the lower weight of drugs. The two co-defendants who have been sentenced so far include Curtis Hilliard, considered the "leader of the conspiracy" who received a sentence of 70 months, and Terrence Turner who was responsible for the 5 – 15 kilogram weight of drugs and received a sentence of 48 months. PSR,¶¶ 12, 18.

While certain factors occurred causing his bail to be revoked and him being remanded to federal custody, Mr. Latimore, is remorseful for those actions and understands the gravity of what he did, which included his involvement with marijuana while on pretrial release, and postings to social media. He notes that while he understands that these actions certainly have to be considered by Your Honor in fashioning a sentence, he respectfully requests that Your Honor consider them together with the plethora of mitigating factors set forth in this submission.

IV.     **The Offense**

From at least 2020 up to and including February 2022, Mr. Latimore and other co-conspirators conspired to distribute and possessed with intent to distribute 5 kilograms or more of cocaine and 28 grams or more of cocaine base in violation of U.S.C. ¶ 841(b)(1)(A) and 841(b)(1)(B). PSR, ¶ 2.

---

[1] This is discussed more fully in the next section.

### V.  18 USC § 3553(a) Factors Support Sentence of 36 Months in Prison

####   a.  Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

This Court must consider the factors of 18 USC § 3553(a) when determining a sentence that is sufficient but not more than necessary to satisfy the goals of sentencing.  One of those factors is the nature and circumstances of the offense. While this is a serious offense, it is a nonviolent one. Moreover, the Government permitted Mr. Latimore to plead to a criminal offense that does not have a mandatory minimum sentence.  Further, Mr. Latimore has accepted responsibility for his conduct and has pleaded guilty to this offense. The offense conduct of the Presentence Report provides that Mr. Latimore "was a street level dealer, who in terms of relative culpability is in the bottom third of the charged defendants." PSR, ¶ 32.  And while a sentence of 36 months is a substantial variance from the advisory Guidelines, it is justified when considering all of the factors of § 3553(a)

Your Honor has imposed sentences on some of the co-defendants in this case. As noted above, to date, at least two co-defendants charged in this matter have been sentenced.  Curtis Hilliard, determined to be the "leader of the conspiracy" and held accountable for trafficking in between 5 – 15 kilos of cocaine -- more than 3 times more the maximum drug weight attributable to Mr. Latimore, received a sentence of 70 months. Another co-defendant, determined to be responsible for the distribution for the same amount of drugs as Mr. Hilliard (5 – 15 kilos of cocaine), received  a sentence of 48 months.  Both of these defendants are substantially more culpable in the conspiracy than Derrick.

Another factor that supports a substantial variance is Mr. Latimore's criminal history.  Although Derrick  has 7 criminal history points on paper according to the PSR, which puts him in the criminal history category of IV, there are several factors that suggest that Mr. Latimore's criminal history is overstated, or that the § 3553(a) factors support a sentence less than that in his advisory range. Initially, the 2023 Guideline Amendments that go into effect in November 2023, provide that those who have 6 or less criminal history points (calculated without the addition of the status points),  should not receive any status points under USSG § 4A1.1(e).  Since Mr. Latimore has only has 5 criminal history points in total without the addition of status points, (*see* PSR, ¶¶ 74 – 83), under the Amendments, he would not receive the additional 2 points. Thus, with only 5 criminal history points, Mr. Latimore would be in a criminal history category of III, rather than IV. That adjustment reduces Derrick's advisory range to 121 – 151 (from 135 - 168). *See* PSR, ¶¶ 132-133. Moreover, most of Mr. Latimore's criminal history occurred more than 20 years ago. *See* PSR, ¶¶ 51 – 70.  In the last 15 years, Mr. Latimore has only had 2 other convictions besides the current matter –for one he received a sentence of probation (PSR, ¶ 79). His other recent offense occurred in January 2020, during the time frame of the instant conspiracy and was a drug sale that occurred in New York City. PSR, ¶ 83. This matter should be considered relevant conduct.  Moreover, Mr. Latimore's state attorney has advised that the state Judge intends to run that sentence concurrent to this sentence.

The Court must also consider the history and characteristics of Mr. Latimore. As the defense has pointed out above, Mr. Latimore has a strong supportive family, and is extremely motivated by the birth of his newborn twins to make this his final time he spends away from his children. While Derrick will unfortunately miss a few of his children's birthdays, a sentence of 36 months in prison will allow him to be released to help raise his twins through most of their formative years. Additionally, since being incarcerated, Mr. Latimore has continued to rehabilitate himself and take advantage of multiple courses that are set forth above and obtained many certificates. Derrick has also put his skills to work in the jail and has undertaken and has been entrusted with cutting inmates' hair in the jail in exchange for commissary credits. He has a plan that he wants to effectuate, and his actions support that these are goals he can attain. As noted above, prior to being incarcerated, Derrick began to take online college classes at Salem University. He would like to continue taking those classes to obtain a college degree in finance. He would like to thereafter open his own barber shop. Derrick has clearly worked to ensure that he is set up for success once released from jail. He is committed to his family and to be an involved father in his twins' life and to provide them with a loving, caring, and stable home. And importantly, his family and friends remain supportive and willing and able to help him transition to a law abiding and productive life once he is released from prison.

These factors demonstrate that a 36-month prison sentence is sufficient, but not more than necessary, to achieve the goals of sentencing.

b. **The Need for the Sentence Imposed…to Afford Adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, Or Other Correctional Treatment in the Most Effective Matter**

A 36-month prison sentence is appropriate when considering deterrence and protecting the public from future crimes. While Mr. Latimore's bail was remanded due to his non-compliance, he has seen the error of his ways and understands that a life of crime is one that he does not want to be a part of anymore. He is older – just having turned 44 while incarcerated last month, and statistically his chance of committing future crime is reduced with age. In a letter to the Court, Derrick writes, "I still have some work cut out for me but the hardest part is behind me and that was being able to identify my many flaws." *See* Latimore Letter to Court, hereto attached as Exhibit F.

As noted above, Derrick has undertaken every educational and vocational course that was available to him while in custody. He has been able to complete certificate programs that teach a variety of skills that will prepare him for taking further action once released and will ultimately allow him to obtain a good paying job to support his children and family. Moreover, he has taken courses such as "leadership and influence" as well as "conflict resolution." *See* Exhibit E. From these coursed, Mr. Latimore has acquired a number of transferrable skills that will help him when he is out of prison in a variety of ways. He also has the support of family and friends who have indicated their willingness to support Derrick in all ways upon his release.

6

A prison sentence of 36 months adequately addresses the § 3553(a) factors in this subsection.

### VI. Conclusion

Given all of the facts and surrounding circumstances that have been referenced herein, it is respectfully requested that a sentence of 36 months of imprisonment, is sufficient, but not more than necessary to satisfy the goals of sentencing. Mr. Latimore respectfully requests that the Court impose such a sentence.

                    Respectfully submitted,

                    s/ Lorraine Gauli-Rufo, Esq.
                    Lorraine Gauli-Rufo, Esq.
                    *Attorney for Derrick Latimore*

cc: Ashley Nicolas,
Alexander Li, Matthew J.
King, AUSAs